Friedland v Itzhaki (2025 NY Slip Op 51420(U))

[*1]

Friedland v Itzhaki

2025 NY Slip Op 51420(U)

Decided on September 8, 2025

Supreme Court, Westchester County

Jamieson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 8, 2025
Supreme Court, Westchester County

Jason Friedland, Michael Friedland, and Benjamin Friedland, 
 individually and derivatively on behalf of Shleppers Holdings LLC, Plaintiffs,

against
Raz Itzhaki, Eyal Golan, and Shleppers Holdings LLC, Defendants.
Raz Itzhaki, Eyal Golan, and Shleppers Holdings LLC, Third-Party Plaintiffs,
against
Jason Friedland, Michael Friedland, SHLP 149 LLC, and 
 Civic Van Lines, Inc., d/b/a Civic Van Lines, LLC, Third-Party Defendants.

Index No. 74159/2024

Yankwitt LLP
Attorneys for Plaintiffs
140 Grand Street, Suite 705
White Plains, New York 10601
Denlea & Carton LLP
Attorneys for Defendants 
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Golenbock, Eiseman, Assor, Bell & Peskoe LLP
Attorneys for Third-Party Defendant Civic Van Lines, Inc. d/b/a Civic Van Lines, LLC and Plaintiff/Third-Party Defendant Michael Friedland
711 Third Avenue, 17th Floor
New York, New York 10017

Linda S. Jamieson, J.

The following papers numbered 1 to 7 were read on the motion (seq. no. 4) by plaintiff Jason Friedland ("plaintiff") for: (1) an Order pursuant to CPLR § 6301 preliminarily enjoining defendants Raz Itzhaki ("Itzhaki") and Eyal Golan ("Golan") (together, "defendants") from usurping plaintiff's exclusive authority to set defendants' compensation by paying themselves any bonus or compensation in excess of their current annual salary of $300,000; and (2) an Order of attachment pursuant to CPLR §§ 6201(1) and 6212 against the property located in New York that is owned by defendants in the amount of $763,473, attributable as $358,695 from Itzhaki and $404,778 from Golan:
Papers    
Numbered
Order to Show Cause 1
Affidavit, Affirmation and Exhibits in Support 2
Memorandum of Law in Support 3
Affirmations and Exhibits in Opposition 4
Memorandum of Law in Opposition 5
Affidavit, Affirmation and Exhibit in Reply 6
Memorandum of Law in Reply 7
 RELEVANT BACKGROUND
This action arises out of a business relationship among the parties involving a moving and storage business.
Specifically, the Complaint alleges in relevant part that derivative plaintiff Shleppers Holdings LLC ("Shleppers") was founded in 2007 by plaintiff and his family members, plaintiffs Michael Friedland ("Michael") and Benjamin Friedland ("Benjamin"). See NYSCEF Doc. No. 1 at ¶¶ 1-86. It alleges that Shleppers is governed by an Amended and Restated Operating Agreement dated February 1, 2014 (the "Operating Agreement"), which provides that Shleppers is managed jointly by plaintiff and the two defendants, with defendants responsible for running the business's day-to-day operations. Id. It further alleges that plaintiff owns 40 percent of the company, with Michael and Benjamin together owning another 9.446 percent thereof. Id. It alleges that Itzhaki owns a 28.889 percent share of Shleppers and that Golan owns 21.665 percent thereof, such that defendants collectively own 50.554 percent of Shleppers. Id.
The Complaint further alleges that Articles 4.32(a) and (b) of the Operating Agreement provide that plaintiff "shall be the sole arbiter of salary and compensation" for both defendants. Id. It alleges that notwithstanding plaintiff's exclusive authority to determine the amount of compensation to be paid to defendants by Shleppers, defendants have engaged in the waste of corporate assets and substantial self-dealing, and have "used Shleppers as their personal piggy bank, issuing to themselves bonuses and loans without authority or [plaintiff's] consent." Id.
Based upon the foregoing allegations as detailed in the Complaint, plaintiffs assert derivative and direct claims for breach of fiduciary duty and breach of contract, as well as a claim for an accounting of Shleppers and a cause of action seeking a declaratory judgment that Shleppers is not permitted to defend and/or indemnify defendants for the conduct alleged in the Complaint. Id. at ¶¶ 87-125.
Defendants furnished an Answer in which they, inter alia, denied the Complaint's material allegations, raised nine affirmative defenses thereto, and asserted six counterclaims, [*2]including counterclaims against plaintiff for breach of contract and breach of fiduciary duty. See NYSCEF Doc. No. 2.
In a Decision and Order dated May 23, 2025, the Court denied plaintiff's motion (seq. no. 1) to dismiss the first counterclaim for breach of contract. See NYSCEF Doc. No. 38. In relevant part, the Court rejected defendants' contention that Articles 4.32(a) and (b) of the Operating Agreement are ambiguous, noting that such provisions clearly state that plaintiff "is the only determiner, the person who can solely decide what [defendants'] salaries should be." Id. However, the Court emphasized that notwithstanding plaintiff's unambiguous authority to determine defendants' compensation, plaintiff is nonetheless bound by the implied covenant of good faith and fair dealing in exercising such authority. Id. The Court stated: "[w]hile [plaintiff] has the sole discretion to determine defendants' salaries, he cannot do so arbitrarily, capriciously, and vindictively." Id.
Plaintiff thereafter moved (seq. no. 4)[FN1]
by proposed Order to Show Cause for: (1) an Order pursuant to CPLR § 6301 preliminarily enjoining defendants from usurping plaintiff's exclusive authority to set defendants' compensation by paying themselves any bonus or compensation in excess of their current annual salary of $300,000; and (2) an Order of attachment pursuant to CPLR §§ 6201(1) and 6212 against the property located in New York that is owned by defendants in the amount of $763,473, attributable as $358,695 from Itzhaki and $404,778 from Golan. See NYSCEF Doc. Nos. 42-48.
In sum and substance, plaintiff argues that he is likely to succeed on the merits of his claims for breach of fiduciary duty and breach of contract because defendants' conduct has violated and continues to violate the express terms of the Operating Agreement. Id. Plaintiff further contends that absent an injunction, he will suffer irreparable harm if defendants are permitted to continue to engage in self-dealing in violation of plaintiff's rights in the Operating Agreement. Id. Plaintiff also asserts that the balance of the equities favors plaintiff, who seeks to restore and maintain the status quo during the pendency of this litigation and the issuance of an injunction. Id. Plaintiff further argues that the Court should issue an Order of attachment because he is likely to succeed on the merits of his claims against defendants; that defendants are non-domiciliaries and there exists sufficient reason to attach their property for security reasons; and that the claims against defendants exceed the sums sought by the counterclaims. Id.
On July 17, 2025, the Court heard oral argument regarding plaintiff's application, and issued an Order to Show Cause. See NYSCEF Doc. Nos. 49, 71. In so doing, the Court indicated that based upon plaintiff's submissions, the "drastic" remedy of an Order of attachment was not warranted. See NYSCEF Doc. No. 71. Although the Court did not formally deny the branch of plaintiff's motion seeking an Order of attachment at that time, it made clear that plaintiff's submissions were insufficient for purposes of issuing an Order of attachment, and that further briefing was only warranted regarding the branch of plaintiff's motion seeking preliminary injunctive relief. Id.
Defendants thereafter opposed the remaining branch of plaintiff's motion, namely, his application for preliminary injunctive relief. See NYSCEF Doc. Nos. 53-65. In sum and [*3]substance, defendants argue that as with the Court's expressed disinclination to grant plaintiff's request for an Order of attachment, the drastic remedy of preliminary injunctive relief is unwarranted. Id. Defendants contend that plaintiff knew about the alleged conduct underlying his motion for approximately one year, yet made no emergency application or request for injunctive relief at the time that he filed the Complaint in October of 2024, and did not seek a temporary restraining order in connection with his motion. Id. Defendants assert that the Complaint's third and fourth causes of action for breach of the Operating Agreement, which mirror the allegations underlying plaintiff's instant motion for a preliminary injunction, seek only monetary damages. Id. Accordingly, defendants argue that because plaintiff's alleged damages are compensable in money and are capable of calculation, plaintiff faces no irreparable injury in the absence of injunctive relief, and his motion should therefore be denied. Id.
Plaintiff's motion was deemed to be fully submitted following plaintiff's submission of a reply in further support of his motion. See NYSCEF Doc. Nos. 68-71.

STANDARD OF REVIEW FOR PRELIMINARY INJUNCTIVE RELIEF
It is well-settled that "[t]o establish the right to a preliminary injunction, a movant must demonstrate (1) the likelihood of success on the merits, (2) irreparable injury absent a preliminary injunction, and (3) that the equities balance in the movant's favor." Benaim v S2 Corona, LLC, 214 AD3d 760, 761 (2d Dept 2023), citing CPLR § 6301 and Cong. Machon Chana v Machon Chana Women's Inst., Inc., 162 AD3d 635, 637 (2d Dept 2018). "The decision whether to grant or deny a preliminary injunction rests in the sound discretion of the court hearing the motion." Benaim, 214 AD3d at 760.
However, "[a] preliminary injunction is a drastic remedy and the [movant], to be entitled to injunctive relief, must establish a clear right under the law and the undisputed facts." Putter v Singer, 73 AD3d 1147, 1149 (2d Dept 2010) (internal quotations omitted); accord Mobstub, Inc. v www.staytrendy.com, 153 AD3d 809, 810 (2d Dept 2017) (stating that "[a] party seeking the drastic remedy of a preliminary injunction has the burden of demonstrating, by clear and convincing evidence, (1) a likelihood of ultimate success on the merits, (2) the prospect of irreparable injury if the provisional relief is withheld, and (3) a balancing of the equities in the movant's favor").

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
Having reviewed the parties' submissions, the Court determines that plaintiff has failed to demonstrate that he faces irreparable injury absent the issuance of a preliminary injunction, such that plaintiff's motion is denied.
It is well-established that "[d]amages compensable in money and capable of calculation are not irreparable." J.S.I.K. Intl. LLC v Schuster, 225 AD3d 472, 473 (1st Dept 2024) (internal quotations omitted); accord Montgomery v 215 Chrystie LLC, 209 AD3d 587, 587 (1st Dept 2022) (affirming the denial of preliminary injunctive relief and holding that "[t]he harm to plaintiff in maintaining the status quo while awaiting trial on her claims is compensable by measurable money damages and therefore not irreparable"); CWCapital Cobalt VR Ltd. v CWCapital Invs. LLC, 168 AD3d 567, 568 (1st Dept 2019) (finding that the Supreme Court properly denied plaintiff's motion for a preliminary injunction where "plaintiff has not shown that it will suffer irreparable harm absent injunctive relief, since the alleged harm would be compensable with monetary damages").
Here, the alleged harm to plaintiff, i.e., defendants allegedly paying themselves bonuses and/or compensation in excess of their current annual salaries, is plainly compensable by [*4]monetary damages. Nowhere in plaintiff's moving affidavit does he articulate any manner of irreparable injury that plaintiff is allegedly facing that cannot be compensated by money damages. See NYSCEF Doc. No. 47. He does not claim that Shleppers faces bankruptcy if defendants' alleged misconduct is not enjoined; he does not allege that he has been deprived of access to Shleppers' books, records, or financial information; nor does plaintiff claim that he is being deprived of his rights as a managing member of the company. Id. Rather, plaintiff merely claims that defendants have improperly paid themselves compensation to which they are not entitled. Id.
Indeed, the Court agrees with defendants that it is telling that plaintiff's fourth cause of action for breach of the Operating Agreement, which mirrors the allegations underlying plaintiff's instant motion for injunctive relief, seeks only monetary damages. See NYSCEF Doc. No. 1 at ¶¶ 109-115. That claim is premised upon the central allegation that "[b]y paying themselves unauthorized bonuses to which they are not entitled and to which [plaintiff] did not consent, Defendants have usurped control provided to [plaintiff] in the Operating Agreement." Id. at ¶ 113. It further alleges that "[a]s a direct result of Defendants' breaches of the Operating Agreement, [plaintiff] has been damaged in an amount to be proven at trial." Id. at ¶ 115.
By way of comparison, plaintiff's motion seeks to enjoin defendants from "usurping [plaintiff's] exclusive authority to set the compensation of [defendants] by paying themselves any bonus or compensation in excess of their current annual salary." See NYSCEF Doc. No. 49. This language, which closely parallels the misconduct alleged in plaintiff's fourth cause of action, is plainly compensable by monetary damages, and fatally undercuts plaintiff's ability to allege irreparable injury in the absence of injunctive relief.[FN2]

Moreover, the principal case law cited by plaintiff for the proposition that he faces irreparable injury is readily distinguishable. See NYSCEF Doc. No. 43 at pp. 7-8. Specifically, in Yemini v Goldberg, 60 AD3d 935, 937 (2d Dept 2009), the Court found that the movant faced irreparable injury absent injunctive relief where, unlike here, "control and management" of the relevant entity "were at stake." Spivak v Bertrand, 147 AD3d 650, 651 (1st Dept 2017), is similarly inapposite, as the Court found that "[w]ithout the preliminary injunction, plaintiff will be irreparably harmed, since . . . he will be stripped of his voting power and decision-making rights, including his right to vote on the potential merger." Also distinguishable is Brenner v Hart Systems, Inc., 114 AD2d 363, 366 (2d Dept 1985), in which the Court held that "irreparable injury would result from a denial of the motion because [plaintiff] would then be voted out of office by the other shareholders and thus lose his absolute right to inspect the corporate books." The facts in Cooperstown Capital, LLC v Patton, 60 AD3d 1251, 1253 (3d Dept 2009) also have no relevance to plaintiff's submissions herein, as that case involved "[t]he possibility of plaintiff losing any real say in" the corporate entity's governance based upon defendants' attempt to "wrest complete control over the company."
Furthermore, and without opining as to whether plaintiff may ultimately prevail on the [*5]merits of his claims, the Court is particularly disinclined to award the "drastic remedy" of preliminary injunctive relief on the Record before it, which reflects that: (1) plaintiff waited nearly nine months after the October 2024 filing of this lawsuit to first move for a preliminary injunction in July 2025; and (2) plaintiff neglected to seek a temporary restraining order when he moved for preliminary injunctive relief or at any time during the pendency of this action. See NYSCEF Doc. Nos. 1; 42-48.
In particular, plaintiff's moving affidavit makes clear that he knew about defendants' allegedly improper payments of bonuses and other compensation to themselves long prior to plaintiff's July 14, 2025 filing of the instant motion. See NYSCEF Doc. No. 47. For example, plaintiff avers that "I discovered that on September 7, 2024, [defendants] accrued bonuses for themselves as of August 31, 2024, without my approval or consultation." Id. at ¶ 14. Plaintiff further avers that he "had a discussion with [Itzhaki] in or around early October 2024, during which [Itzhaki] stated his belief that he and [Golan] are entitled to bonuses as part of their salaries." Id. at ¶ 15. Plaintiff avers that defendants "received compensation in 2024" totaling at least $472,000 "more than the amount [plaintiff] authorized," and further avers that "[t]he unauthorized payments continued in 2025." Id. at ¶¶ 16-20. Plaintiff also avers that "over the past few years, [defendants] have utilized Shleppers as their personal piggybank, regularly issuing loans to themselves without obtaining the proper approvals required under the Operating Agreement." Id. at ¶¶ 24-28 (emphasis added).
Accordingly, plaintiff's repeated and unambiguous admission that he knew about defendants' alleged misconduct "over the past few years"—and specifically dating back to at least September 2024—undercuts plaintiff's claim in July 2025 that he now faces irreparable harm in the absent of injunctive relief. See Cavalier v Warren County Bd. of Elections, 210 AD3d 1131, 1133 (3d Dept 2022) (affirming the Supreme Court's denial of a preliminary injunction and noting that "plaintiffs waited six months . . . to commence this action and then sought a preliminary injunction one month later"); Purvi Enters., LLC v City of New York, 62 AD3d 508, 510 (1st Dept 2009) (holding that preliminary injunctive relief was unwarranted and stating that plaintiff's delay "for a period of time to allow the contractual dispute between plaintiff and 3206 Emmons to be resolved undermines plaintiff's claim of irreparable harm"); Casita, L.P. v MapleWood Equity Partners (Offshore) Ltd., 43 AD3d 260, 261 (1st Dept 2007) (reversing the Supreme Court's granting of preliminary injunctive relief where "[p]laintiff also failed to demonstrate . . . irreparable injury, particularly since it offered no justification for delaying its request for an injunction for seven months after having been informed of the conditions").
Therefore, for the reasons stated above, plaintiff's motion for a preliminary injunction is denied in its entirety. See Credit Agricole Indosuez v Rossiyskiy Kredit Bank, 94 NY2d 541, 548 (2000) (stating that "the court will refuse the injunction if convinced that a money judgment is the true object of the action and that all else is incidental"); J.S.I.K. Intl. LLC, 225 AD3d at 473 (noting that "[d]amages compensable in money and capable of calculation . . . are not irreparable" and holding that plaintiffs failed to demonstrate that they faced "a danger of irreparable injury in the absence of an injunction"); Montgomery, 209 AD3d at 587 (affirming the denial of preliminary injunctive relief and stating that "[t]he harm to plaintiff in maintaining the status quo while awaiting trial on her claims is compensable by measurable money damages and therefore not irreparable"); CWCapital Cobalt VR Ltd., 168 AD3d at 568 (finding that the Supreme Court properly denied plaintiff's motion for a preliminary injunction where "plaintiff [*6]has not shown that it will suffer irreparable harm absent injunctive relief, since the alleged harm would be compensable with monetary damages"); Greenhaus v Gersh, 2019 NY Misc. LEXIS 4282, *13 (Sup. Ct. Suffolk Cty. July 23, 2019) (denying a motion for preliminary injunctive relief and noting that "[t]he gravamen of the plaintiffs' complaint is to recover damages for the defendants' alleged breach of fiduciary duty. Although the complaint contains causes of action for equitable relief, a money judgment is the true object of the action").

PLAINTIFF'S MOTION FOR AN ORDER OF ATTACHMENT
As the Court noted at the July 17, 2025 oral argument regarding plaintiff's instant motion, plaintiff has not met his high burden of demonstrating entitlement to an attachment order. See NYSCEF Doc. No. 71. Therefore, the branch of plaintiff's motion seeking an Order of attachment pursuant to CPLR §§ 6201(1) and 6212 is denied. See Harlem River Concrete Inc. v Titan Concrete Inc., 2023 NY Misc. LEXIS 33699, *6 (Sup. Ct. Westchester Cty. Oct. 5, 2023) (holding that "plaintiff has not met its high burden to support the drastic remedy of a prejudgment attachment order"); E. Coast Realtors, Inc. v 175 Nassau Rd. Holding, Inc., 2022 NY Misc. LEXIS 41583, *11 (Sup. Ct. Nassau Cty. Oct. 12, 2022) (stating that "[a]n order of attachment is a drastic remedy and based on the evidence presented, such extreme relief is not warranted at this juncture"); New York Design Center Inc. v Les Migrateurs, Inc., 2008 NY Misc. LEXIS 8757, *5 (Sup. Ct. NY Cty. Mar. 25, 2008) (denying a motion for an attachment order and noting that "[a] prejudgment order of attachment under CPLR 6201(1) requires a showing that drastic action is required for security purposes").

CONCLUSION
Accordingly, based upon the foregoing, plaintiff's motion (seq. no. 4) for a preliminary injunction and an Order of attachment is denied in its entirety.
The foregoing constitutes the decision and order of the Court.[FN3]

Dated: September 8, 2025
White Plains, New York
HON. LINDA S. JAMIESON, J.S.C.
Justice of the Supreme Court

Footnotes

Footnote 1:Motion sequence numbers 2 and 3 were withdrawn by the respective parties and are irrelevant to the instant motion for preliminary injunctive relief and for an Order of attachment. See NYSCEF Doc. Nos. 24-25; 29-33.

Footnote 2:Plaintiff's third cause of action, which is a derivative claim for breach of contract on Shleppers' behalf, similarly seeks monetary damages based upon defendants' alleged breach of the Operating Agreement's provisions that provide plaintiff with control over defendants' compensation and prevent defendants from issuing loans to themselves. See NYSCEF Doc. No. 1 at ¶¶ 102-108.

Footnote 3:All other arguments raised on this motion and all materials submitted by the parties in connection therewith have been considered by this Court, notwithstanding the specific absence of reference thereto.